## MATTER OF RUANGSWANG

### In Deportation Proceedings

### A-20549199

### A-20549108

*Decided by Board December 27, 1976*

(1) Respondents who are husband and wife have conceded deportability and seek adjustment of status under section 245 of the Immigration and Nationality Act as nonpreference immigrants who are exempt from the labor certification requirement of section 212(a)(14) of the Act as provided in 8 C.F.R. 212.1(b)(4), based on the wife's investment of $13,000 in a dry cleaning establishment. The husband's eligibility depends on that of his wife.

(2) Respondent wife does all of the work necessary in conducting the dry cleaning business in which she has invested, assisted only by her husband who works as a part-time employee. Under these circumstances, and notwithstanding respondent's monetary investment, respondent does not qualify for exemption from the labor certification requirement as an investor because her investment does not expand job opportunities in the United States; respondent's labor with respect to her investment places her in direct competition with United States citizens who are dry cleaning operators; and respondent is actually engaged in full-time labor for which it has not been shown that a shortage of able, willing, qualified and available workers exists in the area.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant—remained longer

ON BEHALF OF RESPONDENTS: Bert D. Greenberg, Esquire
8484 Wilshire Boulevard, #730
Beverly Hills, California 90211

BY: Milhollan, Chairman; Wilson, Torrington, Maniatis, and Appleman, Board Members

This is an appeal from the immigration judge's denial of the respondents' applications for adjustment of status. In his decision, which was entered on August 18, 1975, the immigration judge found the respondents deportable and granted them the privilege of voluntary departure.

The respondents, a husband and wife, are both natives and citizens of Thailand. The husband is 31 years of age; the wife is 30 years of age. They were both admitted to the United States on August 14, 1971, the

husband as a nonimmigrant student, the wife as the spouse of a nonimmigrant student. They were authorized to remain until January 31, 1975, but remained thereafter. They conceded deportability.

The respondents seek adjustment of status as nonpreference aliens[1] who are exempt from the provisions of section 212(a)(14) of the Act under 8 C.F.R. 212.8(b)(4) on the basis of the wife's investment in a dry cleaning establishment. The male respondent's case is dependent upon the female respondent's. (Hereafter, the female respondent will be referred to as the respondent.)

The immigration judge concluded that the respondent had not established eligibility for investor classification; he further decided that even if she had, he would deny the applications in the exercise of discretion, because the respondents had been employed in violation of their nonimmigrant status. The immigration judge considered that this adverse factor was not outweighed by the favorable factor that they are the parents of a United States citizen child. We agree with the conclusion of the immigration judge regarding eligibility and shall not reach the question regarding discretion.

The provisions of 8 C.F.R. 212.8(b)(4) were amended effective October 7, 1976, but we shall consider this case under the prior version of the regulation, the one which was in effect when the respondent first applied for consideration thereunder. The amendment was accompanied by a statement that Forms I-526 (Request for Determination that Prospective Immigrant is an Investor) properly filed before the effective date of the amendment are to be processed in accordance with the regulation as it existed prior thereto. 41 Fed. Reg. No. 174, p. 37566 (9-7-76). The respondent submitted her Form I-526 on June 17, 1974.

The applicable version of the regulation provides:

> The following persons are not considered to be within the purview of section 212(a)(14) of the Act and do not require a labor certification: . . . (4) an alien who establishes on Form I-526 that he is seeking to enter the United States for the purpose of engaging in a commercial or argicultural enterprise in which he has invested, or is actively in the process of investing, capital totaling at least $10,000, and who establishes that he has had at least 1 year's experience or training qualifying him to engage in such enterprise.

The respondent testified and submitted evidence that she has invested more than $13,000 in her dry cleaning business. As evidence of her qualifying experience or training she submitted a translation of a document certifying that she had received a bachelor's degree in accountancy from Chulalongkorn University on April 16, 1969, and a statement from the Siam Motor Company, Ltd., Bangkok that she was employed by them from June 1969 until July 1971 doing budgeting and financial review.

---

[1] Nonpreference numbers are currently available for natives of Thailand, according to the Visa Office Bulletin on Availability of Immigrant Visa Numbers for November 1976.

The Service does not contest the amount of the respondent's investment or her qualifications to run the business. She testified that she operates the business alone and that her husband assists her about 28 hours per week. Her net income from the business was about $7,500 during 1974 (Tr. 8). Her profit or loss statement as of June 30, 1975, for the first six months of 1975 shows $9,094.31 total sales and a net operating profit of $6,038.85. She testified that she was making about $1,000 per month net profit during 1975 (Tr. 8).

At the time that section 212(a)(14) was originally enacted, the drafters of the Immigration and Nationality Act stated that the purpose of the provision was to provide strong safeguards for American labor, to provide American labor protection against an influx of aliens entering the United States for the purpose of performing skilled or unskilled labor where the economy of individual localities is not capable of absorbing them at the time they desire to enter this country. H.R. Rep. No. 1365, 82nd Cong. 2nd Sess. (1952), reprinted in [1952] U.S. Code Cong. & Ad. News 1705.

The 1965 amendment was designed to strengthen the controls even more. S. Rep. No. 748, 89th Cong. 1st Sess. (1965), reprinted in [1965] U.S. Code Cong. & Ad. News 3328, 3333. Section 212(a)(14) requires that each alien seeking to enter the United States for the purpose of performing skilled or unskilled labor to establish that "(A) there are not sufficient workers in the United States who are able, willing, qualified, and available . . . and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed."

The certification requirement applies to the nonpreference category, which is the category applicable to the respondent. The desired effect of the requirement is to exclude an intending immigrant who would be likely to displace a qualified American worker or whose employment would have an adverse impact on the wages and working conditions of workers similarly employed in the United States.

The implementing regulation on which the respondent relies, 8 C.F.R. 212.8, was designed to be consonant with the language and purposes of the Act; accordingly, we must construe the regulation in a manner which would be consistent therewith. It was not designed to provide a method of circumventing the normal labor certification requirements, *Matter of Lee*, Interim Decision 2415 (BIA 1975), *Matter of Ahmad*, Interim Decision 2316 (BIA 1974). The nature of the investment must be such that it tends to guard against the possibility that the alien will compete with American labor for available skilled or unskilled positions, *Matter of Takayanagi*, Interim Decision 2472 (BIA 1976), *Matter of Heitland*, 14 I. & N. Dec. 563 (BIA 1974).

Thus, notwithstanding that an alien has invested $10,000 or more in a

commercial or agricultural enterprise and has the requisite experience to engage in that enterprise, the alien is not exempt from the labor certification requirement if he or she is likely to displace an American worker or if his or her employment would have an adverse impact on wages or working conditions. See *Matter of Chiang*, Interim Decision 2488 (BIA 1975), *Matter of Takayanagi, supra, Matter of Lee, supra, Matter of Yang*, Interim Decision 2335 (R.C. 1974). The nature of the respondent's investment is such that her employment in the business appears likely to displace an American worker.

The respondent testified that she does all the work connected with her dry cleaning business (Tr. 9). She tags, wets, and pre-spots the clothes, and puts them in the machines; when the clothes are dry, she removes them from the machines, presses them if necessary, and hangs them up. She does the counterwork: receiving orders and payments, and delivering the finished work to the customers. The business is open from 9:00 a.m. to 6:00 p.m. on weekdays, and from 9:00 a.m. to 5:00 p.m. on Saturdays. The only assistance that she has is that of her husband. In order to become a licensed dry cleaner operator, she took a course at a dry cleaning institute. Her certificate of training is in the record.

In a previous case which dealt with an owner-operated one-person business, *Matter of Heitland, supra*, we observed that the alien's position essentially involved skilled or unskilled labor, in that his employment (delivery service driver) did not differ significantly from other taxi or delivery jobs. The respondent's employment as a dry cleaning operator is not unlike that of dry cleaning operators who work for others. No allegation is made that there is a shortage of such workers.

In *Heitland, supra*, we developed a "test concerning substantial investments":

> The investment either must tend to expand job opportunities and thus offset any adverse impact which the alien's employment may have on the market for jobs, or must be of an amount adequate to insure, with sufficient certainty, that the alien's primary function with respect to the investment and with respect to the economy will not be as a skilled or unskilled laborer.

That case was decided pursuant to language in a former regulation which exempted aliens who were investing a "substantial amount of capital" from the labor certification requirement. We consider the criteria applicable as well to the regulation before us in this case (which specified that the investment must be of at least $10,000).

To qualify for investor status, the nature of the investment must be such that the investor is spending his energies in the management of the investment, rather than in performing labor which can be performed by a worker already in the United States, unless the business expands job opportunities thereby offsetting any adverse impact of the alien's own employment.

The respondent's investment does not tend to expand job opportunities. In fact, it has done the opposite, for under the prior owner, there was a job opportunity for an American worker (which the respondent illegally filled), which was eliminated when the respondent purchased the business and commenced doing all the work herself.

Furthermore, the nature of the respondent's labors in regard to her investment put her in direct competition with United States citizens who are dry cleaning operators. She does not fit the concept of an investor. She is actually engaged in full-time labor for which it has not been shown that there is a shortage of workers in the area who are able, willing, qualified and available. The respondent's labor is not merely incidental to her business, but is her primary function; it consumes most of her time. Furthermore, she is not making a true profit from her investment, for what she labels as "net profit" is actually payment for her own labor.

We are aware of language in prior cases that an investor's employment in his own business is not the "job competition" which the Congress wishes to protect against, *Matter of Ko*, Interim Decision 14 I. & N. Dec. 349 (Dep. Assoc. Commr. 1973) and that a bona fide investor may properly be able to engage in activities of a skilled or unskilled nature, *Matter of Ahmad, supra*. We would limit those statements to situations in which the investor is not performing labor of a skilled or unskilled nature which might be performed by an American worker, or else in which the investment has a tendency to expand job opportunities.

Having resolved the case on the basis of eligibility, it is not necessary for us to address the question of whether the respondents would merit the relief of adjustment of status in the exercise of discretion if they were eligible for it.

ORDER: The appeal is dismissed.

FURTHER ORDER: Pursuant to the immigration judge's order, the respondents are permitted to depart from the United States voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the District Director; and in the event of failure so to depart, the respondents shall be deported as provided in the immigration judge's order.