**Izhak BAHAT, Plaintiff/Appellant,**

**v.**

**Joseph SURECK, District Director of the Immigration and Naturalization Service, Los Angeles District, Defendant/Appellee.**

**No. 79–3374.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1980.

Decided Jan. 30, 1981.

David F. Aberson, Aberson & Korenberg, Encino, Cal., for plaintiff/appellant.

Katherine V. Tooks, Los Angeles, Cal., for defendant/appellee.

Before HUG and BOOCHEVER, Circuit Judges, and RICHEY,* District Judge.

BOOCHEVER, Circuit Judge:

Izhat Bahat, a native of Germany and a citizen of Israel, appeals from a summary judgment granted by the district court in favor of the District Director of the Immigration and Naturalization Service ("INS"), affirming the Director's denial of Bahat's Application for Status as a Permanent Alien. Bahat contends that he is entitled to exemption from the labor certification requirement of Section 212(a)(14) of the Immigration and Nationality Act as amended, 8 U.S.C. § 1182(a)(14),[1] by reason of his

---

* The Honorable Mary Anne Richey, United States District Judge for the District of Arizona, sitting by designation.

1. 8 U.S.C. § 1182(a)(14) specifies:

(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

(14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that (A) there are not sufficient workers who are able, willing, qualified (or equally qualified in the case of aliens who are members of the teaching profession or who have exceptional ability in the sciences or the arts), and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply to preference immigrant aliens described in section 1153(a)(3) and (6) of this title, and to non–preference immigrant aliens described in section 1153(a)(8) of this title. . . .

investment of $10,000 in an electrical contracting business and his prior experience as an electrician.

The "alien investor" regulation in effect on June 30, 1976, when Bahat filed his application, eliminated the labor certification requirement under certain circumstances. The exemption applied if the alien entered the United States for the purpose of engaging in a commercial or agricultural enterprise in which the alien had invested capital of $10,000 and had had at least one year's experience and training qualifying engagement in such enterprise.[2] Although Bahat complied with the literal terms of the regulation, the District Director denied Bahat's application for adjustment of status, stating:

> It has long been held that in order for an application of this type to receive favorable consideration, the "investment" must tend to expand the market for jobs within the United States and thereby guard against the possibility that the alien will compete with American labor for available skilled or unskilled positions. *Matter of Heitland,* I. D. 2259, BIA January 25, 1974.
>
> Evidence submitted in support of the application indicates that you have applied the minimum $10,000 to an already existing business in return for which you are employed as an electrician.
>
> [The i]nstant application, therefore, is merely a conduit by which you would seek to enter the labor market as an electrician. Therefore, your application is denied as a matter of law. (E.R. 8)

Thus, in addition to the literal requirements of the regulation, it was held that the investment must meet the requirements set forth in *Matter of Heitland.*

■ Our standard for reviewing the district court's award of summary judgment to the Director is whether the Director's denial of Bahat's application constituted an abuse of discretion.

To review that denial of relief a consideration of abuse of discretion would necessarily be two–fold (1) if reasonably supported by *any* evidence the determinations of administrative tribunals must be affirmed; (2) if however, not supported by evidence or although supported by evidence the decision is the result of a misunderstanding of the law, an administrative determination will be reversed.[3]

Here there are no factual disputes and the sole question is whether the decision is the result of a misunderstanding of the law. Bahat complied with the literal requirements of the version of 8 C.F.R. § 212.-8(a)(4) in effect at the time of his application. Specifically we must determine whether, as applied to Bahat, the regulation was modified by the January 25, 1974 interim decision of the Board of Immigration Appeals in the *Matter of Heitland,* 14 I & N Dec. 563 (BIA 1974), *aff'd.* 551 F.2d 495 (2d Cir.), *cert. denied* 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977). Because we believe (1) that *Heitland* did not give adequate notice to Bahat that the 1973 version of the regulation was modified, and (2) that the application of *Heitland* to the 1973 amendments was an improper circumvention of rule making procedure, we reverse.

For an understanding of our reasons for reaching this conclusion, it is necessary to set forth a brief history of modifications made in the applicable regulations. The regulations were promulgated by the Commissioner of Immigration & Naturalization to implement the requirements of 8 U.S.C. § 1182(a)(4). That section states that aliens seeking to enter the United States for the purpose of performing skilled or unskilled labor shall be ineligible to receive visas un-

---

**2.** 8 C.F.R. § 212.8(b)(4), effective February 13, 1973, provided in part:

(b) The following persons are not considered to be within the purview of Section 212(a)(14) of the Act and do not require a labor certification: . . .

(4) an alien who establishes on Form I–526 that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actively in the process of investing, capital totaling at least $10,000, and who establishes that he has had at least 1 year's experience or training qualifying him to engage in such enterprise. . . ."

**3.** *Loza–Bedoya v. I & NS,* 410 F.2d 343, 346 (9th Cir. 1969) (emphasis in original).

less the Secretary of Labor certifies that there are not sufficient American workers and that the employment of the aliens will not adversely affect the wages and working condition of workers in the United States similarly employed.[4]

Prior to 1973 the regulation interpreting section 1182(a)(4) provided that labor certification would not be required if the alien who will engage in a commercial or agricultural enterprise invests "a substantial amount of capital."[5] To show that an investment was substantial, *Heitland* imposed two alternative requirements. The investment either (1) "must tend to expand job opportunities" or (2) "be of *an amount adequate to insure, with sufficient certainty, that the alien's primary function with respect to the investment, and with respect to the economy will not be as a skilled or unskilled laborer.*" *Heitland*, 14 I & N Dec. at 567 (emphasis added).

We believe that the vagueness of the "substantial investment" standard apparently caused difficulties leading to the promulgation of more specific requirements. In any event in 1972 the following amendment of the regulation was proposed:

> (b) *Aliens not required to obtain labor certifications* ... (4) an alien who established on Form I–526 that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise *which may reasonably be expected to be of prospective benefit to*

the economy of the United States and not intended solely to provide a livelihood for the investor and his family, *and in which he has invested or is actively in the process of investing his own capital, totaling at least $25,000 exclusive of goodwill or personal skills ....*[6]

This version, however, was not adopted and in lieu thereof the 1973 amendment required only a $10,000 investment and one year's experience.[7] In essence the INS takes the position that the 1973 version of the investment regulation was modified by *Heitland* to include essentially the same requirements that were rejected by the Commissioner in promulgating the amended regulation.

As pointed out by a panel of this court in *Ruangswang v. I & NS*, 591 F.2d 39, 44–45 (9th Cir. 1978), administrative agencies may properly use adjudication to announce and apply new standards of conduct.[8] In *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974), the Supreme Court indicated, however, that there may be situations where reliance on adjudication would be an abuse of discretion, stating in upholding the regulation at issue:

> Furthermore, this is not a case in which some new liability is sought to be imposed on individuals for past actions which were taken in good–faith reliance on Board pronouncements. Nor are fines or damages involved here.

---

4. *See* note 1 *supra*.

5. 8 C.F.R. § 212.8(b)(4) provided:
   (b) *Aliens not required to obtain labor certification.* The following persons are not considered to be within the purview of § 212(a)(14) of the Act and do not require a labor certification * * * (4) an alien who will engage in a commercial or agricultural enterprise in which he had invested or is actively in the process of investing a substantial amount of capital. * * *

6. 37 Fed.Reg. 23274 (1972) (emphasis added).

7. *See* note 2 *supra*. The regulation was again amended in 1976 after Bahat's application to read:
   (b) *Aliens not required to obtain labor certification.* The following persons are not considered to be within the purview of sec-

tion 212(a)(14) of the Act and do not require a labor certification: ...
   (4) an alien who establishes on Form I–526 that he has invested, or is actively in the process of investing, capital totaling at least $40,000 in an enterprise in the United States of which he will be a principal manager and that the enterprise will employ a person or persons in the United States who are United States citizens or aliens lawfully admitted for permanent residence, exclusive of the alien, his spouse and children.

8. *Ruangswang* relied on the following Supreme Court decisions: *SEC v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969); *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 290–95, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974).

*Id.* at 295, 94 S.Ct. at 1772, 40 L.Ed.2d at 154.

In *Ruangswang,* the panel concluded that the attempted modification of the regulation by adjudicative proceedings [9] constituted an abuse of discretion as applied to Mrs. Ruangswang. *Ruangswang* involved an initial investment made under the 1973 regulation prior to January 25, 1974, when *Heitland* was decided. Accordingly, the panel concluded that Mrs. Ruangswang did not receive adequate notice of the adjudicatory modification of the regulation.

> First, the INS had recently amended its investor regulation, setting forth seemingly objective criteria, which she met. Second, on the date of her initial capital outlay, there was no *Heitland* law or dictum that could have led her to conclude that more was required than the objective criteria stated in the regulation.[10]

Bahat, unlike Ruangswang, made his investment in 1976, long after the *Heitland* interim decision. In determining the adequacy of Bahat's notice of the *Heitland* modification, we first consider that the interim decision of the BIA in *Ruangswang* was not issued until December 1976, after Bahat had made his investment.[11] Thus *Ruangswang* did not provide Bahat with notice that the INS considered *Heitland* as applying to the 1973 amended regulation as well as to the earlier version specifically considered in *Heitland.*[12]

We do not believe that *Heitland* gave Bahat adequate notice that the 1973 regulation would be construed in the same manner as the vague earlier regulation requiring investment of a "substantial amount of capital." In fact, *Heitland* set forth as an alternative test that the investment "must be of an amount adequate to insure, with sufficient certainty, that the alien's primary function with respect to the investment and with respect to the economy will not be as a skilled or unskilled laborer." [13] The earlier regulation considered in *Heitland* did not require the investment of a specific sum.[14]

A plausible reading of the 1973 amendment, coupled with the *Heitland* interpretation of the earlier regulation, is that the $10,000 investment requirement was the amount determined by the Commissioner to insure with sufficient certainty that the alien's primary function with reference to the investments would not be as a skilled or unskilled laborer. Applicable to Bahat is the comment in *Ruangswang:*

> Even if she had investigated the history of the 1973 regulation, she would have

---

9. For a general discussion of adjudicatory regulatory powers, see: II K. Davis, Administrative Law Treatise §§ 7:25–29 (2d ed. 1979); Mayton, *The Legislative Resolution of the Rule Making Versus Adjudication Problem in Agency Law Making,* 1980 Duke L.J. 103, 115–21; Fuchs, *Development and Diversification in Administrative Rule Making,* 72 Nw.U.L.Rev. 83, 89 (1977).

10. *Ruangswang v. I & NS,* 591 F.2d 39 (9th Cir. 1978).

11. *Matter of Ruangswang,* 16 I & N Dec. 76 (BIA 1976), *reversed* 591 F.2d 39 (9th Cir. 1978).

12. Although not cited to us by learned counsel for the INS, we note that *Matter of Yang,* decided by a regional commissioner on Dec. 24, 1974, was published as Interim Decision # 2335. 8 CFR § 1033(1) provides that in addition to Attorney General and BIA decisions, service officer decisions selected by the INS Commissioner shall serve as precedent in all proceedings involving the same issue. Such decisions by service officers are required to be published. We have no specific evidence that

the INS selected *Yang* to serve as precedent, but take judicial notice that a published copy was received in the circuit library in San Francisco on June 5, 1975, prior to Bahat's investment. *Yang* does apply the *Heitland* standards to a case under the 1973 regulation. The *Yang* case, however, concerned an investment of $10,000 to purchase less than $1/10$ of 1% of the outstanding shares of a large corporation which employed Yang. Narrowly read, *Yang* merely gives notice that an investment in a large corporation over which the immigrant has little, if any, direction and control does not qualify for an exemption of labor certification. If *Yang* were considered by the INS to give notice that *Heitland* applied to other types of investments made under the 1973 amendment, we are confident that INS counsel would have cited it.

13. *Matter of Heitland,* 14 I & N Dec. 563, 567 (BIA 1974), *aff'd* 551 F.2d 495 (2d Cir.), *cert. denied,* 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1975).

14. *See* note 5 *supra.*

only become aware that in promulgating its amendment to the investor regulation, the INS had explicitly decided to omit language strikingly similar to that which the Board would now insert by this adjudication. The unexplained specific eradication of substantially the same added investor requirement during rule–making and the subsequent effort to reestablish the requirement by adjudication require us to be especially concerned whether the INS gave adequate notice to Mrs. Ruangswang.[15]

Certainly, an alien reading the specific language of the 1973 amendment, who was aware of its history and the *Heitland* interpretation, could justifiably conclude that the exemption from the labor certification requirement would apply if the $10,000 investment were made by one with the requisite experience. To hold otherwise could result in a cruel hoax by encouraging investments of lifetime earnings for an illusory goal. Moreover, one under orders of deportation may well be in no position to recoup such an investment.

The admonition of Judge Sneed in his *Ruangswang* concurrence appears particularly pertinent:

> Adjudication by an agency to establish a rule or policy inconsistent with its recently adopted regulation suggests administrative confusion and uncertainty. The costs of this inefficiency should not always be borne by the individual being governed. An instance in which society should bear these costs is where the individual had no reason to know that the word of the regulations is not the will of the agency. I think such a situation exists in this case.

591 F.2d at 46.

Subsequent to oral argument in this case a panel of this court similarly concluded that *Heitland* does not afford adequate notice. In *Patel v. I & NS*, 638 F.2d 1199 at 1205 (9th Cir. 1980) the panel stated:

15. *Ruangswang v. I & NS*, 591 F.2d 39, 45–46 (9th Cir. 1978).

16. We are aware of the somewhat baffling statement made in connection with a 1976 amendment of the regulation which explicitly

In addition to our conclusion that *Heitland* was an improper circumvention of rule–making procedure, we also conclude that the Board abused its discretion by applying the job–creation criterion to Patel. Although Patel invested money and applied for the investor exemption well after *Heitland* was decided, we doubt that he could have clearly determined what he must do to qualify for the exemption. The INS had been sending aliens confusing signals. In promulgating the 1973 regulation, the INS had expressly eliminated language similar to the job–creation criterion in *Heitland*. When the Board decided in *Heitland* that the criterion applied to the out–of–date, pre–1973 regulation, it only obscurely stated in dictum that it would also be applied to the 1973 regulation. *In re Heitland, supra,* 14 I. & N. Dec. at 566–67. It was not until 1976 that the regulation was amended to include clearly the job–creation criterion.

\* \* \* \* \* \*

In view of the agency's confusion with respect to the job–creation criterion and the resulting hardship to Patel, we hold that the Board abused its discretion in applying that criterion in this case.

■ We also agree with *Patel's* alternate holding that *Heitland* was an improper circumvention of rule making procedure. In addition to the reasons cogently set forth in *Patel*, we note that the regulations of the INS are promulgated by the Commissioner, who serves under the Attorney General of the United States, while a separate agency under the Attorney General, the Board of Immigration Appeals, adjudicates individual cases. Although we agree with *Patel*, at —— n.4 that this dual delegation does not prevent adjudicatory action, we question the authority of the BIA to amend the regulation by adjudication to include essentially the same provisions that were rejected by the Commissioner in promulgating the regulation.[16] It is the Commissioner

included an expansion of employment requirement, and raised the minimum investment to $40,000, that:

> No change is to be made in the basic requirement because the investor exemption

who is given the primary function of promulgating regulations. That authority should not be nullified by the adjudicatory arm of the INS.

The summary judgment in favor of the Director is reversed,[17] and the case is remanded for further proceedings.

REVERSED and REMANDED.

was never intended to apply to an alien who was making an investment in an enterprise which would provide only a means of livelihood for himself and his family in competition with citizens and permanent resident aliens having similar investments. . . .
41 Fed.Reg. 37566 (1976).

We agree with *Ruangswang* that this comment is difficult to reconcile with the language and history of the 1973 regulation. 591 F.2d at 45 n.11.

17. We acknowledge that the Second Circuit reached a contrary conclusion in *Mehta v. I & NS*, 574 F.2d 101 (2d Cir. 1978). *Mehta*, however, does not discuss most of the reasons which have led the *Patel* panel and us to differ from its holding.

