**Somnuck HIRUNPIDOK, Somchua Hirunpidok, Petitioners,**

**v.**

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

**No. 79–7501.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1980.

Decided April 6, 1981.

Benjamin G. Myron, Los Angeles, Cal., for petitioners.

Dzintra I. Janavs, Los Angeles, Cal., for respondent.

Before HUG and BOOCHEVER, Circuit Judges, and RICHEY,* District Judge.

RICHEY, District Judge:

Petitioners Somnuck and Somchua Hirunpidok, natives and citizens of Thailand, appeal from a decision of the Board of Immigration Appeals (BIA) affirming the Immi-

---

* The Honorable Mary Anne Richey, United States District Judge for the District of Arizo-na, sitting by designation.

gration Judge's (IJ) denial of their Application for Status as Permanent Aliens. Petitioners contend that they are entitled to exemption from the labor certification requirement of Section 212(a)(14) of the Immigration and Nationality Act as amended, 8 U.S.C. § 1182(a)(14) (1976),[1] by reason of their investment of more than $10,000 in a market.

■ The IJ and BIA first found that petitioners' investment was less than the $10,000 minimum required by the regulation in effect at the time petitioners filed their application. *See* 8 C.F.R. 212.8(b)(4).[2] This court must accept this determination if it is supported by substantial evidence in the record. *See Lee v. INS*, 541 F.2d 1383, 1384–85 (9th Cir. 1976).

■ In making its determination, the BIA did not take into account expenditures made by petitioners after May 26, 1975, the date petitioners filed their application.[3] The regulation in effect at the time petitioners made their application, however, provides that to be eligible for investor status, the alien must have "invested *or [be] actively in the process of investing,* capital totalling at least $10,000" (emphasis added).[4] The clear implication of this language is that expenditures made after the date on which an alien files his application are to be considered in making the $10,000 determination if the alien is in the process of actively investing at the time he files his application.

In this case, petitioners were in the process of actively investing; they simply had not fully committed all their capital at the time their application was filed.[5] There-

---

1.  8 U.S.C. § 1182(a)(14) specifies:
    (a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
    (14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that (A) there are not sufficient workers who are able, willing, qualified (or equally qualified in the case of aliens who are members of the teaching profession or who have exceptional ability in the sciences or the arts), and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply to preference immigrant aliens described in section 1153(a)(3) and (6) of this title, and to non-preference immigrant aliens described in section 1153(a)(8) of this title;

2.  8 C.F.R. § 212.8(b)(4), effective February 13, 1973, provided in part:
    (b) The following persons are not considered to be within the purview of Section 212(a)(14) of the Act and do not require a labor certification: ...
    (4) an alien who establishes on Form I–526 that he is seeking to enter the United States for the purpose of engaging in a commercial or agricultural enterprise in which he has invested, or is actively in the process of in-

vesting, capital totaling at least $10,000, and who establishes that he has had at least 1 year's experience or training qualifying him to engage in such enterprise ..."

3.  The BIA noted the following expenditures:

    | | |
    |---|---|
    | (1) escrow deposit | $ 300.00 |
    | (2) payment to seller | 7,528.00 |
    | (3) payment to Schonfeld (The BIA designated Schonfeld as an unidentified person. The investor petition identifies him as an attorney. Presumably he aided petitioners in preparing their application and purchasing their business). | 200.00 |
    | (4) Los Angeles Department of Water and Power deposit | 180.00 |
    | | $8,208.00 |

    Also included was an expenditure of $1,033.50 for a refrigerator. Apparently, the BIA also took into account $99.00 out of $399.00 in checks dated in April and May of 1975. The remaining $300.00 was felt to be part of the escrow deposit noted in item (1) (TR 3 4).

4.  *See* note 2 *supra.*

5.  Prior BIA decisions indicate that one is not "actively investing" when his investment is contingent upon the occurrence of some event or is tentative in nature. *See Matter of Lui*, Interim Decision 2354 (BIA 1975) (intent to invest conditioned upon approval of investor status is not actively investing); *Matter of Lee*, Interim Decision 2415 (BIA 1975) (conditional intent to invest evidenced by a conditional promissory note is not actively investing);

fore, the BIA was in error in not considering expenditures made by petitioners during June and August of 1975. These expenditures, when combined with petitioners' pre-application expenditures, render petitioners' investment in excess of $10,000.[6] The BIA's determination that petitioners' investment was less than $10,000, therefore, it not supported by substantial evidence.

The BIA also denied petitioners' application on the ground that their investment did not tend to expand job opportunities within the United States. This requirement was not literally a part of the regulation in effect at the time petitioners filed their application.[7] In *Matter of Heitland*, 14 I&N Dec. 563 (BIA 1974), the Immigration and Naturalization Service took the position that the job-opportunity-expansion requirement, in addition to the criteria explicitly provided for in the regulation, must be met before an alien investor would be considered exempt from the labor certification requirement of 8 U.S.C. § 1182(a)(14).

In *Bahat v. Surek*, 637 F.2d 1315 (9th Cir. 1981), this panel held that the additional requirement set forth in *Heitland* could not be applied to an alien investor who had filed his application approximately 13 months after petitioners in the instant case. In support of this decision, we concluded that *Heitland* did not give the alien investor in *Bahat* adequate notice that the regulation in effect at the time he filed his application had been modified. *Id.* at 1319–20. We further noted that the application of the additional *Heitland* requirement to the 1973 regulation was an improper circumvention of rulemaking procedure. *Id.* at 1320.

*Matter of Khan*, 16 I&N Dec. 138 (BIA 1977) (same).

 Similarly, we conclude that the application of *Heitland's* job-opportunity-expansion requirement to the petitioners in the present case was improper. Petitioners filed their application on May 26, 1975, more than one year before the alien in *Bahat* filed his application. It follows that like the alien in *Bahat*, petitioners had inadequate notice that the *Heitland* requirement would be applied to their investment. We further conclude that the application of the *Heitland* requirement to the regulation governing this case was an improper circumvention of rulemaking procedure. *Id.*

The decision of the BIA is reversed and the case is remanded for further proceedings.

REVERSED and REMANDED.

| Record | Date | Item | Amount |
|---|---|---|---|
| 77 | 4/25/75 | payment to seller (Benitez) | $ 2500.00 |
| 81 | 5/9/75 | payment to Schonfeld | 200.00 |
| 82 | 4/30/75 | payment to seller | 1500.00 |
| 82 | 4/28/75 | payment to seller | 3500.00 |
| 82 | 4/30/75 | payment to seller | 28.00 |
| 85 | 8/26/75 | insurance on business | 252.00 |
| 119 | 5/12/75 | refrigeration equipment | 1033.50 |
| 120 | 5/23/75 | water and power deposit | 180.00 |
| 121 | 4/28/75 | escrow payment to Business Title Corp. | 300.00 |
| 121 | 5/16/75 | Department of Alcoholic Beverage Control | 63.00 |
| 121 | 5/12/75 | Business Title Corp. | $ 36.00 |
| 122 | 6/8/75 | Alcoholic Beverage Control | 96.50 |
| 123 | 6/18/75 | State Board of Equalization | 360.00 |
| | | TOTAL | $10049.00 |

Because petitioners' investment through June 18, 1975, was in excess of $10,000.00, we need not decide whether petitioners were actively investing in November 1975 when they purchased an automobile for their business.

**7.** *See* note 2 *supra.*